# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTA DE LA TORRE,<br><br>　　　　Plaintiff,<br>　vs.<br><br>LEGAL RECOVERY LAW OFFICE, et al.,<br><br>　　　　Defendants. | CASE NO. 12cv2579-LAB (WMc)<br><br>**ORDER GRANTING MOTION TO DISMISS; AND**<br><br>**ORDER GRANTING IN PART MOTIONS TO STRIKE**<br><br>**[DOCKET NUMBERS 19, 21, 22.]** |

This order amends and replaces the Court's order of September 30, 2013 (Docket no. 30). The Clerk is directed to remove that order from the docket, and in its place file this order, *nunc pro tunc* to September 30.

Plaintiff Marta De La Torre brought this action under the Fair Debt Collection Practices Act (FDCPA), the Telephone Consumer Protection Act (TCPA), California's Rosenthal Fair Debt Collection Practices Act (Rosenthal Act), and several state theories including negligence, invasion of privacy, intrusion upon seclusion. Capital One Bank was previously a Defendant, and De La Torre brought a claim against it under the Truth in Lending Act. But Capital One has since been dismissed and that claim was dropped. Thus, the only federal claims are brought under the FDCPA and the TCPA; the remainder are state-law claims.

/ / /

The complaint is not as clear as it could or should be, and does not make clear the chronology of events on which the claims are based. Nevertheless, it is possible to identify certain basic facts. Capital One had filed a lawsuit against De La Torre in state court, and was awarded $3,072 plus attorney's fees. The Legal Recovery Law Office ("LRLO") represented Capital One in this action. The remaining Defendants are employed by LRLO and De La Torre alleges they helped LRLO attempt to collect debt. At some point, LRLO and its employees, acting for Capital One, tried to collect money they said De La Torre owed Capital One. De La Torre alleges they tried to collect more than was owed, used abusive tactics in collecting it, and caused her harm as a result.

After Capital One's Dismissal as a party, the remaining Defendants filed three potentially dispositive motions: a motion to dismiss for failure to state a claim (by all Defendants, Docket no. 19), a motion to strike pursuant to California Civil Code § 425.16 (by Defendants Rebecca Beretta, LRLO, and Lorena Ray, Docket no. 22), and another motion to strike pursuant to California Civil Code § 425.16 (by Defendants David Cotter and Mark Walsh, Docket no. 22). The basis for striking claims is a state-law defense and applies only to the state-law claims, not those brought under federal law. These motions are all interrelated, and the Court will therefore consider them together.

**Legal Standards**

**Motion to Dismiss**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ."*Id*. at 555. "[S]ome threshold of plausibility must be crossed at the outset" before a case is permitted to proceed. *Id*. at 558 (citation omitted). The well-pleaded facts must do more than permit the Court to infer "the mere possibility of conduct;" they must show that the pleader is entitled to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

De La Torre cites old, pre-*Bell Atlantic* standards such as the "no set of facts" standard set forth in *Conley v. Gibson*, 350 U.S. 41 (1957). These standards, under which dismissal was only rarely possible, were overruled by *Bell Atlantic*. *See* 550 U.S. at 562–63.

When determining whether a complaint states a claim, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars-Sinai Medical Center v. National League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007) (citation omitted). However, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," and does "not . . . necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citations and quotation marks omitted). "Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint." *Id.* at 1141 n.5.

**Motions to Strike**

In considering Defendants' motion to strike under California's anti-SLAPP statute, the Court must first ask whether they "ha[ve] made a threshold showing that the challenged cause of action arises from a protected activity." *Gallanis-Politis v. Medina*, 152 Cal.App.4th 600, 609 (Cal. Ct. App. 2007). As this language suggests, the burden is on Defendants to make this showing. *See also Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (Cal. 2002). A protected activity is an act "in furtherance of [a] person's right of petition or free speech under the United States or California Constitution in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1). This includes:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest. Cal. Civ. Proc. Code § 425.16(e).

1  But if Defendants' alleged acts fall within the first two prongs of this section, they are "not
2  required to independently demonstrate that the matter is a 'public issue' within the statute's
3  meaning." *Navarro v. IHOP Properties, Inc.*, 134 Cal. App. 4th 834, 842–43 (Cal. App. 4 Dist.
4  2005).
5      If the Court determines that De La Torre's causes of action against Defendants do not
6  arise from a protected activity, that is the end of the analysis, and the anti-SLAPP motion
7  fails. If the Court determines otherwise, the burden shifts to De La Torre to demonstrate a
8  probability of prevailing on her claims. Cal. Civ. Proc. Code §425.16(b)(1). This means she
9  "must demonstrate that the complaint is both legally sufficient and supported by a sufficient
10 prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the
11 plaintiff is credited." See *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1056 (2006) (citation and
12 (quotation marks omitted)
13     Defendants are not required to show that all activities were protected, but only that
14 "protected conduct forms a substantial part of the factual basis for the claim." See *A.F.*
15 *Brown Elec. Contractor, Inc. v. Rhino Elec. Supply, Inc.*, 137 Cal. App. 4th 1118, 1124–25
16 (Cal. App. 4 Dist. 2006). If Defendants meet their burden, De La Torre then must
17 "demonstrate the cause of action has some merit." *Id*.
18     Even if an anti-SLAPP motion is granted, a plaintiff ordinarily will be granted leave to
19 amend. See *Verizon Delaware, Inc. v. Covad Communications Co.*, 377 F.3d 1081, 1091 (9th
20 Cir. 2004). But leave to amend will be denied if amendment would be futile. See *Gardner v.*
21 *Marino*, 563 F.3d 981, 990 (9th Cir. 2009).
22     The parties have attached exhibits to their briefs, which is permitted. But arguments
23 must be raised in the brief itself, not in exhibits. The Court is not required to read exhibits
24 and infer arguments from them. See *Carmen v. San Francisco Unified School Dist.*, 237 F.3d
25 1026, 1030 (9th Cir. 2001) ("A lawyer drafting an opposition to a . . . motion may easily show
26 a judge, in the opposition, the evidence that the lawyer wants the judge to read.") Citations
27 to exhibits must explain the significance of the cited evidence, and the parties cannot
28 circumvent page limits by simply incorporating by reference other documents, such as

attached or lodged exhibits. *See Pagtakhan v. Doe*, 2013 WL 3052865, slip op. at *5 (N.D.Cal., June 17, 2013) ("Plaintiffs also may not circumvent the page limits by incorporating by reference other documents.") Furthermore, it is not the Court's role to read exhibits and use the information it finds there to create arguments for parties. *See Marrapese v. Univ. of Calif. Bd. of Regents*, 2013 WL 2476272, slip op. at *2 (S.D.Cal., June 7, 2013) (citing, *inter alia*, *Jacobson v. Filler*, 790 F.2d 1362, 1364–66 (9th Cir. 1986)) ("The Court cannot comb through [the plaintiff's] exhibits and create arguments for him.")

**Correctness of State Court Judgment**

The judgment of a state court forms part of the factual pattern here. The complaint alleges that Capital One sought to recover $3,748.22, but the court awarded only $3,072. (Compl., ¶ 32.) The court also awarded Capital One $7,500 in attorney's fees against De La Torre. (*Id.*) To the extent De La Torre (or any of the Defendants, for that matter) might be asking the Court to review that judgment, the Court is without jurisdiction to do so. *See Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010) (discussing application of *Rooker-Feldman* doctrine). This does not bar De La Torre from asserting an allegedly illegal act by an adverse party. *See id.* But, at the same time, the Court accepts the state judgment as *res judicata*.

**Discussion**

De La Torre filed the same opposition to both sets of Defendants' motions to strike. Her opposition begins by arguing that because Defendants were not parties to the state court action, they are not protected by California's anti-SLAPP law. In support of this, she cites this Court's own ruling in *Rouse v. Clark Law Offices*, 465 F. Supp. 2d 1031 (2006).

*Rouse* is inapposite. There, the defendant law offices were pursuing a cause of action against a debtor named Dale Rouse, but mistakenly tried to collect debts from Martin Rouse, his estranged son. *Id*. at 1034. The law offices kept calling even after Martin made clear he was not Dale Rouse. *Id*. They also served him with process in a suit against Dale Rouse, obtained a default judgment, and put a lien on his, Martin's property. *Id*. The fact that Martin provided documents proving he was not Dale Rouse was no deterrent. *Id*. As the Court's

1  ruling makes clear, the defendants could not benefit from anti-SLAPP protections because
2  their harassment of Martin Rouse did not arise from a lawsuit against him. It arose instead
3  from a lawsuit against Dale Rouse, and they had reason to know the two were not the same
4  person. "Merely because legal action is filed after protected activity took place does not
5  mean it arises from that activity." *Id*. at 1039 (citing *City of Cotati v. Cashman*, 29 Cal.4th 69,
6  70 (2002)). In other words, the fact that a creditor is suing or preparing to sue does not give
7  it carte blanche to deal in any manner it chooses with people it has reason to know are
8  unconnected to the lawsuit.

9  Here, De La Torre concedes she was the defendant in the state court suit, and Capital
10 One was the plaintiff. She also concedes Capital One hired LRLO to represent it. A protected
11 act includes "qualifying acts committed by attorneys in representing clients in litigation."
12 *Rusheen*, 37 Cal. 4th at 1056.

13 **De La Torre's Request for Judicial Notice**

14 The complaint and oppositions cite various cases in which LRLO or Capital One was
15 sued for illegal debt collection. The complaint cites entire dockets, not any documents within
16 those dockets. (Compl., ¶ 88.) In support of her oppositions, De La Torre requests that the
17 Court take judicial notice of her counsel's PACER search. His declaration states that he ran
18 a PACER search for "Legal Recovery Law Offices" and downloaded the first six complaints
19 he pulled up; and three of the six alleged unlawful prelitigation collection calls not made in
20 aid of litigation.

21 This is not properly the subject of judicial notice, principally because it is not relevant.
22 *See* Fed. R. Evid. 402. The mere fact that either or both were sued, even if they were sued
23 many times, is immaterial. The fact that other parties made allegations of illegal debt
24 collection against them is inadmissible hearsay. None of the citations are specific enough
25 to establish collateral estoppel as to any issue, because they only identify allegations, not
26 proved or adjudicated facts. And even if De La Torre had cited parts of the record showing
27 either or both violated debt collection laws on some other occasion, that would not be
28 admissible to show they had so acted on this occasion. *See* Fed. R. Civ. P. 404(b). The

standard for taking judicial notice, *see* Fed. R. Evid. 201, is far from being met here, and the request is **DENIED**.

**Motion to Strike by Defendants Cotter and Walsh**

These two Defendants point out they are both attorneys employed by LRLO, and argue they were not involved in any prelitigation activity, and their first involvement with De La Torre occurred when LRLO filed suit on behalf of Capital One. Cotter provides a declaration stating that his role in the matter was limited to litigation-related matters such as discovery, trial, and settlement negotiations with De La Torre's attorney. (Cotter Decl. in Supp. of Mot. to Strike (Docket no. 22-3), ¶¶ 8, 9.) He says he never communicated with De La Torre except in her attorney's presence. (*Id.*, ¶ 10.) He also says his employment with LRLO began after LRLO filed suit. (*Id.*, ¶ 11.)

Walsh provides a declaration stating that his activity was limited to prosecution of the complaint, and that he communicated with De La Torre only in the presence of her attorney. (Wash Decl. in Supp. of Mot. to Strike (Docket no. 22-4), ¶¶ 4–7.)

De La Torre denies any of this is true, but in evaluating the first prong, the Court only considers whether the movants have made the required threshold showing. Cotter's and Walsh's evidence is sufficient to meet this standard because it shows their actions were taken in furtherance of litigation. The burden therefore shifts to De La Torre to show that the complaint is legally sufficient, and that it is supported by sufficient evidence to make out a prima facie case. *See Rusheen*, 37 Cal. 4th at 1056.

The complaint's allegations in support of the particular state law claims incorporate previous factual allegations as to Defendants generally, including the following:

- Defendants placed calls to De La Torre's cellular and home phone.
- They called her after she demanded the calls to end.
- Someone at an unspecified time told De La Torre over the phone she owed $4,929.36, which was more than she owed.
- The Defendants demanded a down payment of $1500 at an unspecified time.

(Compl., ¶¶ 16, 17, 31, 37.)

The complaint identifies both Cotter and Walsh as attorneys employed by LRLO, which they do not dispute. (Compl., ¶¶ 3–4.) It also says they were acting as debt collectors, and knowingly and willingly violated the law while attempting to collect a debt (*id.*), which is really a series of legal conclusions, not factual allegations.

The complaint also includes several conclusory allegations as to Defendants generally. It alleges that Defendants are "debt collectors that used abusive, unfair, false and misleading statements in an attempt to collect a debt" from De La Torre, and that they were at all times acting at Capital One's direction. (*Id.* ¶ 15.) It also alleges De La Torre prevailed in the state court action, because the court found that LRLO, Cotter, Walsh, and Capital One were attempting to collect more than she owed. (*Id.*, ¶ 36.) But an earlier allegation makes clear this last conclusion is unwarranted. The state court found De La Torre liable not only for $3,072.00, but also for $7,500 in attorney's fees. (*Id.*, ¶ 32.) De La Torre's conclusion, in other words, is that because Capital One recovered about $700 less than it asked, she was in fact the prevailing party. But the fact that the court awarded substantial attorney's fees shows this conclusion is unwarranted. The remainder of the factual allegations are limited to what Capital One or LRLO did.

The allegations in support of the Rosenthal Act, negligence, and intrusion on seclusion (or invasion of privacy) claims, other than the factual allegations incorporated by reference, are wholly conclusory. They consist of the type of formulaic recitals *Bell Atlantic* held were insufficient. *See* 550 U.S. at 555. The factual allegations are far from sufficient to state a claim against Cotter or Walsh under any of the three state-law theories.

Cotter and Walsh have raised the litigation privilege as to all claims against them. This privilege covers communications made by litigants and their counsel "in connection with or in preparation of litigation". *Kashian v. Harriman*, 98 Cal. App. 4th 892, 908 (Cal. App. 5 Dist. 2002). The privilege is broad, and shields communications having "some relation" to judicial proceeding. *See A.F. Brown* 137 Cal. App. 4th at 1126. It covers communications made before litigation began, as long as litigation was contemplated in good faith and under serious consideration. *Id.* at 1128. This includes prelitigation demands, provided they would

otherwise qualify. *See Aronson v. Kinsella*, 58 Cal. App. 4th 254, 315–16 (Cal. App. 4 Dist. 1997).

De La Torre cites *Heintz v. Jenkins*, 514 U.S. 291, 292–94 (1995) for the proposition that when lawyers act as debt collectors, their activity is actionable. This precedent has no application here, however, because that case dealt solely with a FDCPA claim. The motion to strike seeks only to strike state law causes of action, which are subject to state law defenses including the litigation privilege.

The opposition makes numerous references to debt collection letters, and De La Torre's own declaration says she received six of them. (De La Torre Decl. (Docket no. 26-1), ¶ 8.) But the complaint says nothing about De La Torre receiving any letters. Furthermore, the suggestion that these were "debt collection letters" is a legal conclusion.

The only evidence De La Torre points to is her own declaration, and her husband's. Her opposition says that this declaration "identifies each of the defendants as engaging in the complained of pre-litigation conduct." (Opp'n to Cotter & Walsh Mot. (Docket no. 26), 11:2–9.) The Court has examined her declaration, and although she swears under penalty of perjury that all Defendants called her numerous times before the lawsuit was filed, she does not parcel out who made which calls, when they were made, or what was said on the calls. The Court accepts De La Torre's and her counsel's representations that what she intends to swear to is that she knows both Walsh and Cotter called her before the lawsuit began.[1] Even so, this evidence is unpersuasive, because all it says is that the calls were made "prior to the filing of this lawsuit." It also does not differentiate out which Defendants made which calls. This leaves open the distinct possibility that Cotter and Walsh called her in connection with the lawsuit. Accepting that as true, Walsh's and Cotter's declarations cannot be wholly true, but they still would be entitled to claim the litigation privilege.

---

[1] The Court believes this is what De La Torre's counsel intends to say, because it is the only way that De La Torre's declaration can be construed as relevant or helpful. If this is not correct, De La Torre's counsel must correct the misimpression before taking any further action against Walsh or Cotter. In the absence of any correction, the Court will accept his representation that he has conferred with his client about what she meant to say, and that she did intend to state, under penalty of perjury, that she knows both Cotter and Walsh called her before litigation began. *See* Fed. R. Civ. P. 11(b).

De La Torre's husband's declaration (Docket no. 26-2) says essentially the same thing. The only information it adds is that "defendants called [his] place of work and left messages regarding the debt collection activity on my wife's account." (*Id.*, ¶ 6.) The declarations say that each of the calls said the purpose was to collect a debt and that the call was being recorded. This does not show whether Cotter, Walsh, or anyone else was acting as a debt collector within the meaning of the law; it is also consistent with their being attorneys making demand on a debt before filing suit.

The Court therefore finds De La Torre has failed to carry her burden, and that Cotter and Walsh are entitled to prevail on their motion to strike the state law claims against them.

**Motion by Defendants LRLO, Beretta, and Ray**

These three Defendants argue, and have provided evidence, that Capital One hired them to file a lawsuit to collect a debt. (LRLO, Beretta, & Ray Mot., Ex. 1 (Rundquist Decl.), ¶ 4.) They have provided a phone log, authenticated by a declaration, that they say shows that only four calls were placed to De La Torre's home before litigation began. (*Id.*, Exs. 1 & 2.) They provide evidence that these calls were made solely in order to verify her home address so that they could serve her with process. (Rundquist Decl., ¶ 5.) Their motion says nothing specific about any calls they placed to her cell phone, but it characterizes the calls to her home as the only calls they made to her.[2] They deny calling De La Torre's husband's work, and provide evidence to support this. (*Id.*, ¶ 10.)

They also argue, and provide evidence, that later communications with De La Torre were made only to notify her they were about to file suit, (Rundquist Decl. ¶ 6) or during the course of litigation. (*Id.*, ¶¶ 7–9.)

Because Defendants LRLO, Beretta, and Ray have provided evidence showing they made the calls alleged in the complaint only in connection with litigation, they have made the

---

[2] The Court construes this, as well as the Rundquist Declaration, as representing that these three Defendants made calls only to De La Torre's home number, and none to her cell phone. (*See* Rundquist Decl., ¶ 5 (characterizing the phone calls to De La Torre's home number as "[a]ll pre-litigation phone calls").) If this is incorrect, or if Defendants' counsel has not confirmed that Rundquist intended to so state under penalty of perjury, Defendants' counsel is directed to correct the misimpression promptly. *See* Fed. R. Civ. P. 11(b).

threshold showing.  The burden therefore shifts to De La Torre to show that the complaint is legally sufficient, and that it is supported by sufficient evidence to make out a prima facie case. *See Rusheen*, 37 Cal. 4th at 1056.

Because De La Torre's opposition makes virtually the same arguments as her opposition to Cotter's and Walsh's motion, it suffers from many of the same defects. The Complaint's factual allegations as to these Defendants are somewhat more specific, however.

The Complaint alleges Ray and Beretta were attorneys employed by LRLO. Other than the allegations already discussed, the allegations against LRLO concern allegedly improper service of process (Compl., ¶¶ 18–19); misstatements (through Ray) about the service of process (*id.*, ¶ 20); the filing of a false proof of service (*id.*, ¶ 21), misstatements about the validity of service (*id.*, ¶ 22); LRLO's leaving of voicemails or messages at De La Torre's home number and her husband's work number (*id.*, ¶¶ 23, 25); LRLO's continuing to contact De La Torre after she told them to stop and after someone at LRLO said they would stop (*id.*, ¶¶ 27, 29); LRLO's contacting De La Torre after it knew she was represented by counsel (*id.*, ¶ 28); LRLO's filing of a lawsuit seeking a larger amount than it ultimately recovered (*id.*, ¶¶ 30, 32, 33, 36); and LRLO's demands that De La Torre pay her debt on unreasonable terms, including a down payment of $1500. (*Id.*, ¶¶ 37–39.) The only allegations about Beretta are conclusory allegations similar to those made about Walsh and Cotter. *i.e.*, that she[3] is a debt who knowingly and willingly violated the law while trying to collect a debt. Other than a similar conclusory allegation about Ray, and the allegation in paragraph 20 that Ray made a misstatement about service of process, the only allegation against her is that she falsely implied she was an attorney at law. (*Id*. ¶ 47(d).) This conflicts with paragraph 5, however, which alleges that Ray "is, and at all times herein mentioned was, an attorney employed by LRLO . . . ."

/ / /

---

[3] The Complaint refers to both Ray and Beretta as "he." (*See* Compl., ¶¶ 5, 6.) But the fact that their names are Lorena and Rebecca, respectively, suggests that they are women.

LRLO, Ray, and Beretta rely on the litigation privilege. The Complaint makes clear many of the acts LRLO is alleged to have committed occurred during or in connection with litigation, and Ray and Beretta as individuals are hardly alleged to have done anything. The remaining allegations against LRLO and the generalized allegations against all Defendants are not specific enough as to the time frame and content to rule out the possibility that the litigation privilege applies.

De La Torre's brief argues that unlawful prelitigation debt collection activities are not protected by the litigation privilege. That may be so, but the complaint doesn't plead facts showing that communication by LRLO, Ray, and Beretta with De La Torre consisted of debt collection as opposed to litigation-related activities. For example, if these Defendants in good faith contemplated litigation and were making prefiling demands, their demands would be protected. *See Aronson*, 58 Cal. App. 4th at 315–16. The one to whom such a demand is directed might well object to it or insist that preparation for litigation cease, but if this is litigation activity, it would still be protected.

The only evidence De La Torre offers is her and her husband's declarations, making approximately the same statements as before. Even accepting her statement that LRLO, Ray, and Beretta called for some other purpose than to gain information about where to serve De La Torre, the calls may still fall within the litigation privilege if they were logically connected to the litigation in some other way. De La Torre also points to her and her husband's declarations saying that other calls were made to them. But in the absence of details about what was said during the calls, when the calls were made, and who made them, this evidence does not does not make out a prima facie case. The motion to strike must therefore be granted as to claims against LRLO, Ray, and Beretta as well.

**Motion to Dismiss**

The motion argues, first, that the Complaint is insufficiently pled, that it fails to give individual Defendants notice of what they are alleged to have done, and on what facts its claims rest.

///

The Complaint is built primarily on legal conclusions, starting with the fact that LRLO and its employees were debt collectors. Whether a person or entity is a debt collector within the meaning of the FDCPA or Rosenthal Act is a legal determination. The conclusion whether a person is a debt collector is based on facts, such as whether the person is in the regular business of consumer-debt collection. *See Anderson v. Kimball, Tirey & St. John LLP,* 2013 WL 5229814, at *3 (S.D.Cal., Sept. 16, 2013) (construing meaning of "debt collector" as used in the FDCPA); *Long v. Nationwide Legal File & Serve, Inc.*, 2013 WL 5219053, at *13 (N.D.Cal., Sept. 17, 2013) (construing meaning of "debt collector" as used in the Rosenthal Act). For example, an attorney who is *not* in the regular business of collecting consumer debts is not a debt collector within the meaning of the FDCPA, *see* Heintz v. Jenkins, 514 U.S. 291, 292 (1995), and no attorney is a debt collector within the meaning of the Rosenthal Act. *See Abels v. JBC Legal Group, P.C.,* 227 F.R.D. 541, 547–48 (N.D.Cal. 2005). A law firm that, in the ordinary course of business regularly engages in debt collection can, however be a debt collector. *Id*. (citing Cal. Civ. Code § 1788.2(c).

De La Torre argues that because the motion to dismiss did not specifically attack the allegations as insufficient to show Defendants were debt collectors, she does not need to address this. The motion, however argued that the allegations in general were insufficient to plead a claim.

Defendants also object that the Complaint does not say which allegations support claims against which Defendants, which is true. As it stands, the complaint alleges that nearly all Defendants together engaged in all the activity underlying De La Torre's claims. For purposes of ruling on the motion to dismiss, the Court accepts De La Torre's factual allegations.

The Complaint alleges that Defendants violated numerous sections of the FDCPA. (Compl., ¶ 51.) The motion to dismiss goes through the allegations supporting each of these, arguing that they are insufficient, and explaining what is missing from the pleadings. De La Torre, in opposition, argues she is not required to plead all facts necessary to establish her claim, and that the Defendants and the Court should infer what she has not pleaded. For

example, the Complaint alleges that LRLO contacted De La Torre after she told it she was represented by counsel. (Compl., ¶ 28.) Defendants point out that doing so is not always a FDCPA violation; for example, if her attorney consented to it or if her attorney failed to respond within a reasonable time, the communication does not violate the FDCPA. *See* 15 U.S.C. § 1692c(a)(2). De La Torre's argument that the Court can reasonably infer these conditions are absence is incorrect, particularly because Defendants have specifically challenged them. If she wants the Court to accept facts at the pleading stage, she must plead them. The pleaded facts need not rule out every possibility, but they must at least plausibly show that De La Torre is entitled to relief. *See Bell Atlantic*, 550 U.S. at 554 (holding that, at the pleading stage, plaintiffs were required to plead facts to exclude the reasonable possibility that defendants acted lawfully). Defendants make similar arguments with regard to other FDCPA and Rosenthal claims.

As another example, the complaint alleges some unspecified person told De La Torre she owed $4,929.36, which was more than she owed. (Compl., ¶ 31.) Apparently she intends Defendants and the Court to assume this was LRLO. But in the previous paragraph she made allegations that both LRLO and Capital One proceeded to collect on an amount not owed. This leaves open the possibility that someone working for Capital One told her this. Because Capital One is no longer a Defendant, this allegation does not explain why LRLO would be liable. Furthermore, there is no connection with any other Defendant. The next paragraph alleges that LRLO and Capital One sued to recover $3,748.22 but only recovered $3,072.00, and that this shows they were trying to collect on a larger amount than they owed. Defendants' motion correctly points out, however, that the Complaint does not "identify what the state court, if anything, rejected as unrecoverable by contract or law." (Mot., 16:13–15.)

Even if De La Torre were proceeding *pro se* and were entitled to liberal construction of her complaint, she still could not expect the Court to supply facts she did not plead. *See Ivey v. Board of Regents of Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir.1982). The Motion goes through a series of arguments of this type. The Court need not address each one in detail; it is sufficient to say that they all follow the same general pattern. Defendants'

arguments, in short, are well-taken. The Complaint relies too much on labels and conclusions, and does not plead enough facts to make out a plausible FDCPA or Rosenthal claim. *See Bell Atlantic*, 127 S.Ct. at 1964–65.

With regard to the TCPA claims, Defendants make similar arguments. They also point out that De La Torre never alleged the date or contents of even one call they are alleged to have made. De La Torre did provide some information about the calls and contents, but Defendants are correct that there is little to put them on notice of what she is alleging. For example, Defendants probably would not be able to check their phone records for any calls made to De La Torre's cell phone or to her husband's office without knowing when the calls were made. The Complaint does say Defendants left messages that were overheard by others (Compl., ¶¶ 23, 25), but does not plead facts showing that this was the intention or fault of Defendants.

Defendants also cite *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027 (9th Cir. 2010) for the proposition that false but not immaterial misrepresentations are not actionable under the FDCPA. They argue that the misrepresentations De La Torre alleged against them were not material. In reply, she merely argues they could materially mislead her, under the "least sophisticated consumer" standard. (Opp'n, 12:11–13:21.) But her argument is that because the statements were "patently false" and had something to do with collections, they must be material. The alleged misrepresentations she identifies are also not all misrepresentations; one of them is a promise (to stop calling her) that they didn't keep, and another is allegedly illegal service and pursuit of default judgment. (Opp'n, 13:13–16.) The others concern the proper way service of process is effected. The Complaint doesn't even include enough information for the Court to determine whether the alleged misstatements about service of process were material.

In short, the Complaint is insufficiently pleaded as to all federal claims. De La Torre has, however, requested leave to amend, which will be granted. To avoid, if possible, another round of motions to dismiss and amendment of the Complaint, De La Torre is encouraged to review the statutes and common law elements of her claims under which she

is suing, and to make sure she has pleaded facts to support her claims. By way of example, she claims that Defendants intruded on her solitude by telephoning her and leaving messages. While courts have sometimes allowed such claims against debt collectors for phone calls, such claims generally arise only out of "truly egregious" behavior. *See Smith v. Capital One Fin'l Corp.*, 2012 WL 3138024, at *3 (N.D.Cal., Aug. 1, 2012).

Finally, if De La Torre amends, she should endeavor to the extent possible to provide details such as approximate dates of calls, how many calls were made, who called her,[4] and what was said.

**Conclusion and Order**

For these reasons, both motions to strike are **GRANTED IN PART**, and the motion to dismiss is **GRANTED**. De La Torre's state law claims are **STRICKEN**, but not without leave to amend. Her federal claims are **DISMISSED WITHOUT PREJUDICE**.

She may file an amended complaint no later than **Thursday, October 24, 2013**. If she does not amend within the time permitted, the Court will assume she realizes she cannot successfully amend, construe this as an intent to abandon her claims, and will dismiss the action with prejudice. The parties are reminded to review notes 1 and 2, and if they have given the wrong impression as to these or any other facts, to correct it.

**IT IS SO ORDERED**.

DATED: November 12, 2013

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

---

[4] At present, the Court is accepting De La Torre's allegation that all Defendants made every phone call, including those alleged to have been made by the automatic dialer. This seems improbable. If this is not true, De La Torre should try to clarify whether the call was made by an individual, a group, or a mechanized device. All allegations in pleadings are required to be made to the best of De La Torre's counsels' knowledge, formed after a reasonable inquiry. *See* Fed. R. Civ. P. 11(b).