# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| MARTA DE LA TORRE, | CASE NO. 12cv2579-LAB (WMc) |
|---|---|
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;** |
| vs. | |
| | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND** |
| LEGAL RECOVERY LAW OFFICE, et al., | |
| Defendant. | **ORDER OF DISMISSAL** |

Plaintiff Marta De La Torre, proceeding through by counsel, filed her complaint in this case bringing federal and state claims arising out of a state court lawsuit that she claims was an unlawful debt-collection effort, as well as other debt collection efforts. Twice before, the complaint has been dismissed and amended. The Second Amended Complaint ("SAC"), which is now the operative pleading, brings claims under the Fair Debt Collection Practices Act (FDCPA). and California's Rosenthal Fair Debt Collection Practices Act (the Rosenthal Act). Defendant Legal Recovery Law Offices ("LRLO") has moved for summary judgment, and De La Torre has moved for partial summary judgment. The cross motions are fully briefed, and the parties have also filed objections to them.

/ / /

/ / /

**The SAC**

LRLO sued De La Torre on a debt, the essential validity of which De La Torre does not contest. De La Torre's factual allegations initially pertain to service of process, which she argues was defective. (SAC, ¶¶ 17–31.) The SAC alleges that a process server came to De La Torre's house and, when her 15-year-old son answered the door, left the complaint on the porch. De La Torre's husband then came to the door, found the complaint, and saw the process server get in his car and drive away. She concludes this did not amount to valid service of process under California law. She argues this meant that later statements about valid service of process, and later attempts at litigation violated the FDCPA and Rosenthal Act.[1]

De La Torre's factual allegations then deal with allegedly improper phone calls. She alleges that she told LRLO that she could not pay the debt, and demanded that all calls cease, but LRLO continued calling. She says LRLO failed to identify themselves meaningfully, was verbally abusive, and left voice messages on an answering machine in a way that they could be — and were — heard by third parties. (SAC, ¶¶ 31–41.)

The SAC next turns to allegations concerning the litigation. Although LRLO sued for $3,748.22 plus costs and attorney's fees, it was awarded $3,072.00 plus costs and attorney's fees. Because LRLO recovered $676.22, the SAC contends LRLO sued for more than was actually owed, in violation of the FDCPA. The SAC argues that this decision is *res judicata*, and that violation of the FDCPA is therefore established as a matter of law. (SAC, ¶¶ 42–46.)

The SAC alleges De La Torre has sought counseling and suffered both mental and physical symptoms as a result of LRLO's improper collection efforts.

**Legal Standards**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as

---

[1] Although the section on Rosenthal Act claims does not refer to service of process, the factual allegations argue that it violates Cal. Civ. Code § 1788.17. (SAC, ¶23.)

a matter of law." Fed. R. Civ. P. 56(c).  *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). A fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "Factual disputes that are irrelevant or unnecessary [are] not counted." *Id.*

The movant has the initial burden of demonstrating that there is no issue of material fact and that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Arpin*, 261 F.3d at 919. If that is met, the burden then shifts to the non-movant to show that summary judgment is not appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 324 (1986). To resist summary judgment, the nonmovant must point to more than a "scintilla of evidence," *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995), and cannot rest on mere allegations. Questions of law are decided by the Court rather than the jury, and legal conclusions or legal opinions do not create genuine factual disputes. *See MvuInvestors, LLC v. General Elec. Co.*, 417 Fed. Appx. 696, 698 (9th Cir. 2011) (citations omitted).

In considering the motion, the non-movant's evidence is to be believed and all justifiable inferences are to be drawn in his or her favor. *Anderson*, 477 U.S. at 255. As the party with the burden of persuasion at trial, De La Torre must establish "beyond controversy every essential element of its . . . claim." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (citation omitted).  If a rational trier of fact could find in De La Torre's favor, LRLO's motion will be denied, and if a rational trier of fact could find in LRLO's favor, De La Torre's motion will be denied.

Assertion of new claims through argument in a brief opposing summary judgment is not permitted; if a plaintiff wishes to amend, she must do so in accordance with Fed. R. Civ. P. 15(a). *Gilmour v. Gates, McDonald & Co.*, 382 F.2d 1312, 1315 (11th Cir. 2004).

/ / /

**Service of Process**

De La Torre's theory is that because service of process had not legally been effected, LRLO's representations that it had been are actionable. Furthermore, LRLO relied on the effectiveness of service to seek and obtain a default in state court. Under Cal. Civil Code § 1788.15(a), "[n]o debt collector shall collect or attempt to collect a consumer debt by means of judicial proceedings when the debt collector knows that service of process, where essential to jurisdiction over the debtor or his property, has not been legally effected."

LRLO's motion points out that issues pertaining to adequacy of service could have been raised in the state court proceeding but were not, and she is therefore estopped from raising them now. It also points out that once De La Torre made a general appearance in state court, she waived any argument she might have had that service was improper. LRLO also suggests that under the *Rooker-Feldman* doctrine, the Court lacks jurisdiction even to entertain this claim.

The Court is required to decide jurisdictional questions first, before proceeding to the merits. The *Rooker-Feldman* doctrine forbids lower federal courts from hearing direct or defacto appeals from state court judgments. Based on the parties' recitation of the record, it appears the state court did not rule on the sufficiency of service. Rather, that issue became moot once De La Torre made a general appearance. *Rooker-Feldman* prevents this Court from hearing claims allegedly inflicted by the state court's judgment, but does not prevent the Court from considering those inflicted by adverse parties, which the state court failed to rectify. *See Noel v. Hall*, 341 F.3d 1148, 1164–65 (9th Cir. 2003) (citing *GASH Associates v. Village of Rosemont*, 995 F.2d 726, 728–29 (7th Cir. 1993)).

Here, De La Torre's claims are mixed. Because her injuries stemmed from the stress and mental anguish she felt, any of LRLO's acts that caused stress or anguish could be the basis for her claim. In part, her she alleges her injuries resulted from LRLO's telling her that she had to appear or face default, and other actions it took during litigation. Quite apart from any court decision, this could have caused her to worry and feel anguish. But in part, she also appears to be complaining about rulings the state court made — in particular, its entry of default against her. To the extent she is complaining about injuries caused by false

representations she says LRLO made, *Rooker-Feldman* does not apply here, although as *Noel* points out, *res judicata* may. *Noel*, 341 F.3d at 1165 (citing *Jensen v. Foley*, 295 F.3d 745, 747–48 (7th Cir. 2002). But to the extent she is complaining about injuries caused by judgments LRLO's representations procured, *Rooker-Feldman* deprives the Court of jurisdiction.

LRLO's estoppel (that is, issue preclusion) argument then comes into play. Certainly De La Torre could have sought to quash service, and had she done so, the state trial court would have had an opportunity to address it. The Court is required to give the same preclusive effect to the state court's judgment as that same court would. *See Noel*, 341 F.3d at 1160 (citing 28 U.S.C. § 1738 and *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466 (1982)).

California recognizes collateral estoppel as one aspect of *res judicata*. *Safeco Insurance Co. v. Tholen* 117 Cal. App. 3d 685, 696 (Cal. App. 2 Dist. 1981). Ordinarily, issue preclusion requires that the issues in the two proceedings be identical, that the issue have been "actually litigated" and "necessarily decided" in the earlier proceeding, that the earlier decision be final, and that the person to be precluded was either a party or in privity with a party to the earlier proceeding. *Castillo v. City of Los Angeles*, 92 Cal. App. 4th 477, 481 (Cal. App. 2 Dist. 2001). Here, however, De La Torre waived the issue of whether LRLO could properly seek default against her, and the state court proceeded as if it had personal jurisdiction over her.

Looking at the plain language of California courts' holdings on the subject, it does not appear De La Torre would be collaterally estopped, because the question of whether she was properly served was apparently never actually decided. But the analysis does not end there. LRLO cites *City of Riverside v. Horspool*, 223 Cal. App. 4th 670, 680–81 (Cal. App. 4 Dist. 2014) for the principle that failure to timely move to quash service renders the issue non-cognizable in later proceedings. The defendant in *Horspool*, and here, waived the issue, allowing the case to proceed to judgment. While not characterized as collateral estoppel, it appears that California's courts give preclusive effect to a waiver of this kind in later

proceedings.

While the issue is difficult and this reading may not be correct, De La Torre has not shown why it is wrong. Most of her argument focuses on *Rooker-Feldman*, and little on estoppel. She principally attacks LRLO's argument and argues *Horspool* is inapposite. If there is any authority to lend affirmative support to De La Torre's position, she has waived her argument by not citing it. She concedes that *Horspool* stands for the proposition that waiver of service forfeits the right to bring future challenges to jurisdiction based on improper service, but argues that this is not unpersuasive because *Horspool* is not a FDCPA case. (Opp'n, 4: 19--27.) This is unpersuasive, because the question here is whether California's courts would give preclusive effects to the earlier judgment. In the absence of any argument or citation to authority to the contrary, the Court concludes they would, and that it must do so as well.

But even if the estoppel question were resolved differently, it would not change the outcome. First, De La Torre's argument that the propriety of service is a factual question for the jury (Opp'n, 5:21) is incorrect. The underlying facts may sometimes present a jury question, but here the key facts are not in dispute. And where the facts are not at issue, the propriety of service is a question of law. *See Trackman v. Kenney*, 187 Cal. App. 4th 175, 182 (Cal. App. 3 Dist. 2010).

Second, De La Torre's theory that service was improper or ineffective under California law appears to be wrong. Under Cal. Civ. Proc. Code § 415.20(b), service can be effected by delivering the summons and complaint to a defendant's residence and left with someone who is at least eighteen years of age.[2] The SAC alleges, and De La Torre's declaration attests, that the process server came to De La Torre's house, that her 15-year-old son answered the door, and that the papers were left on the porch in his presence, that her

---

[2] There are other requirements as well. Substituted service is permitted after personal service has been tried, and must be followed by mailing of the papers. But the SAC does not allege that these were not met, nor does De La Torre's declaration raise the issue. Rather, De La Torre merely maintains she was not properly served at any other time. And in any case, failure to properly send the follow-up mailing may still amount to substantial compliance, if the person to be served actually receives the summons and complaint. *Dill v. Berquist Construction Co.*, 24 Cal. App. 4th 1426, 1437 (Cal. App. 4 Dist. 1994).

husband came to the door and found them shortly afterwards (while the process server was getting into his car and leaving), and that he gave them to her. (SAC, ¶¶ 19–20; De La Torre Decl. in Supp. of Opp'n to Mot for Summ. J. (Docket no. 77-1), ¶ 12.) Her husband's declaration adds that when he got to the door, their son told him the process server had asked for De La Torre. (Decl. of Carlos De La Torre (Docket no. 77-2), ¶ 14.)

In California, laws governing service of process are "liberally construed to effectuate service and uphold jurisdiction if actual notice has been received by the defendant . . . ." *Bein v. Brechtel-Jochim Group, Inc.*, 6 Cal. App. 4th 1387, 1392 (Cal. App. 4 Dist. 1992) (quoting *Pasadena Medi-Center Assocs. v. Superior Court*, 9 Cal.3d 773, 778 (1973)). This includes substituted service as well as personal service. *Id.* Strict compliance with statutes governing service of process is not required. *Summers v. McClanahan*, 140 Cal. App. 4th 403, 410–11 (Cal. App. 2 Dist. 2006), This does not mean complete failure to serve is excused as long as a defendant has actual notice of the action, but some defects in service will be excused, particularly where the plaintiff uses a method of service that makes it highly probable the defendant will receive service of process. *Id.* at 414. While the evidence, accepted as true, shows the process server's approach was risky, it was nevertheless sufficient under California law and the defects were immaterial.

Leaving the summons and complaint on a doorstep when no one is present is insufficient. *See American Express Centurion Bank v. Zara*, 199 Cal. App. 4th 383, 389 (Cal. App. 4th 2011) *Karnazes v. Hartford*, 2013 WL 4080950 (Cal. App. 1 Dist. 2013). But substituted service can be accomplished by leaving the papers at the defendant's residence in the presence of a competent member of the household. § 415.20(b). The purpose of this provision is to ensure that service is made on a responsible person whose connection with the defendant makes it more likely than not that they will deliver the service papers to the defendant. *Hearn v. Howard*, 177 Cal. App. 4th 1193, 1202–03 (Cal. App. 2 Dist. 2009).

Here, De La Torre's son was present at the door when the papers were left. Her husband was in the house, and came to the door shortly after the papers were left, while the process server was driving off, and found them. Technically, it is difficult to say whether this

1  meant the papers were left in her husband's "presence."  But, liberally construed as
2  California law requires, it amounted to substantial compliance.
3  The SAC also argues that the process server incorrectly said service had been made
4  on De La Torre personally, but under California law this is immaterial. *See Solomon v. Baker*,
5  2013 WL 1881295 at *4 n.2 (Cal. App. 2 Dist. 2013) (citing *Bein v. Brechtel-Jochim Group,*
6  *Inc*,. 6 Cal. App. 4th 1387, 1394 (Cal. App. 4 Dist. 1992)) (process server's checking of
7  incorrect box showing how service was effected did not render service invalid).
8  Accepting De La Torre's evidence as true, LRLO's process server — and therefore
9  LRLO itself — took a risk that service was being made at the wrong household, that her
10 husband would not discover the summons and complaint or that they would be lost, or that
11 she would not receive actual notice of the action against her. *See Karnazes*, 2013 WL
12 4080950 at *2.  But De La Torre concedes, and the undisputed evidence shows, the papers
13 were delivered to the right residence in the care of her family, that the process server made
14 clear the papers were for her, and she got actual notice of the action against her.
15 **Phone Calls**
16 **Calling After Learning De La Torre Was Represented**
17 As an initial matter, the Court notes that De La Torre's opposition briefs a claim for
18 continuing to contact her by phone even after learning she was represented by counsel.
19 (Opp'n, 11:8–22 (citing "Moving Papers, Pg. 7)" [*sic*]).) While the original complaint made
20 such an allegation and based claims on it (Compl., ¶¶ 28, 47(e), 88), the Court ruled this
21 claim was inadequately pled. (Order Dismissing Complaint (Docket no. 30), at 13:28–14:12.)
22 De La Torre then abandoned this claim in her amended complaint, and never raised it in the
23 SAC either. The SAC discusses various other reasons De La Torre told LRLO it should
24 cease calling, but there is no allegation she told them she was represented by counsel. (*See*
25 SAC, ¶¶ 32–38.)   The SAC's sole reference to such a claim is a citation to 16 U.S.C.
26 § 1692c(a)(2), found among a string of citations to various statutes and unsupported by any
27 / / /
28 factual allegations.  (*See id.*, ¶ 56.) The only other time it is mentioned is in her declaration,

offered in opposition to the motion to dismiss. This is insufficient to resurrect the claim.

**Excessive Calling and Abusive Calls**

De La Torre's allegations that LRLO made numerous and repeated phone calls to her home and cell phone are supported by her declaration, which describes the calls as "continuous and constant," and says up to 60 calls were made to her, including fifteen before LRLO filed suit in state court. (De La Torre Decl., ¶ 5, 7, 8.) Some, she declares, were made in short succession, only a few minutes after an earlier call had ended. (*Id.*, ¶ 9.) If true, this could amount to a violation of the Rosenthal Act, § 1788.11(d) and (e). The evidence on these issues is contested, and a jury might find for either party.

De La Torre alleges several other potentially abusive practices, including LRLO's agents promising to cease calling but then continuing calls (SAC, ¶¶ 37--38 ), and its agents failing to meaningfully identify themselves when calling. (*Id.* ¶ 35.) LRLO points to evidence that it recorded all outbound calls, and in all cases the callers were identified as being from Legal Recovery Law Offices. (Mot. for Summ. J., 11:5--27 (citing declaration).) In response, De La Torre provides her own declaration that on "some of the phone calls" LRLO placed to her, the callers identified themselves only as "Law Offices" and refused to identify themselves further. This is enough to put these facts in dispute.

As for the promises to stop calling, the Court addressed this issue earlier, in its order dismissing the original complaint, when it held that an unfulfilled promise to stop calling does not amount to a misrepresentation. (Docket no. 30, 15:19--21.) Whether it could be considered abusive in some other way may raise a different question. But the SAC alleges merely that LRLO made one more call, the day after LRLO's agent said a note would be put in her account to cease calls. (SAC, ¶ 37--38.) In that later call, the SAC alleges that an agent of LRLO said there was no note to stop calling, and that the calls would continue. (*Id.*, ¶ 38.) The SAC does not allege that any more calls were made. LRLO explains that the note was in fact in De La Torre's account, that the agent was returning De La Torre's call at her request, and that the agent overlooked the note. (Mot. for Summ. J., 9:12--21 (citing

declaration).)[3]  Even if repeatedly broken promises not to call could amount to abuse, a single incident does not. That is particularly true on the facts here. In this case, LRLO has provided an explanation, which De La Torre does not challenge, that LRLO's agent was calling at De La Torre's request.

The opposition also points to evidence that LRLO called De La Torre's husband at his place of work. LRLO also points to evidence it did not call him at work, and the parties have briefed the admissibility of this.  While this might be relevant to one or more issues, it is important to mention that this is not the basis for any of De La Torre's claims. The Court's order dismissing the original complaint noted that this claim was inadequately pled (Docket no. 30 at 10:1--7), and it was omitted as the basis for a claim in the next two amended complaints. The only mention of LRLO calling De La Torre's husband was in connection with promises LRLO allegedly made to her that they would not call him at work. (SAC, ¶ 37.)

While LRLO presents evidence that its agents were never abusive and never yelled on the phone, De La Torre provides her own declaration that they were abusive, yelled, and put her own hold for long periods of time as a way of punishing her. (De La Torre Decl., ¶ 11.) This is enough to create a genuine dispute of material fact.

The FDCPA requires that debt collectors cease calls if a consumer, <u>in writing</u>, demands that the collector cease further communication or informs the collector that the consumer refuses to pay the debt. 15 U.S.C. § 1692c(c). LRLO points out that although De La Torre demanded over the phone that LRLO stopped calling, she did not send written notice, and it provides evidence of this. (Rundquist Decl. in Supp. of Mot. for Summ. J. (Docket no. 72-2), ¶ 10.)  De La Torre alleges she said she could not pay the debt, and "made verbal demands that all calls cease" (SAC, ¶ 44), and her declaration provides evidence of this. (De La Torre Decl., ¶ 6.) But all the evidence shows De La Torre made these remarks over the phone, and not in writing.  Because there is no evidence that De La

---

[3] De La Torre objects to this declaration, but the ruling on that objection does not change the outcome. De La Torre has submitted a transcript of the call (Docket no. 77-5, 3--7), which confirms LRLO's version of the facts. The transcript shows LRLO's agent was attempting to return De La Torre's call, and the remainder of the call was an effort to clear up whether there was a note in De La Torre's account regarding future calls.

Torre ever met the conditions of § 1692c(c), LRLO is entitled to summary judgment on the claim that it called even after she demanded the calls stop and after she refused to pay.

**Leaving Messages on Answering Machine**

The SAC alleges that LRLO left voice messages on De La Torre's answering machine, even though there was no indication it belonged to her or was used solely by her. The SAC alleges this violated § 1692c, which prohibits communicating to third parties that the consumer owes a debt, because the messages <u>could be</u> heard by third parties. In opposition, De La Torre provides evidence they were heard by third parties.

De La Torre has provided transcripts of the messages, which follow a script. (Docket no. 77-5, 8--15.) De La Torre's own outgoing message says "Hello. We are not available now. Please leave your name and phone number after the beep. We will return your call." The messages from LRLO identify themselves as being for Marta De La Torre only and caution that others should not listen to them, then ask her to call LRLO back. They correctly identify LRLO as the caller, and disclose "This is an attempt to collect a debt, so any information obtained will be used for that purpose."

De La Torre's contention that LRLO did not know it was her answering machine, and did not know whether it was solely used by her are immaterial, because it was in fact her answering machine. LRLO provides evidence the number it called was the number De La Torre provided to her creditor. De La Torre says, without elaboration, that her answering machine is used by other people besides herself and her husband, and that third parties heard the messages. (De La Torre Decl., ¶¶ 26--27.) Although De La Torre declares that the messages say that she was delinquent on a debt, the transcripts show otherwise.

De La Torre cites an FTC settlement, which she says addresses the same issues. But even the terms of the settlement she cites show that the FTC was concerned with situations where a message was made to a wrong phone number or a shared phone number. For example, the terms of the settlement allow voice messages to be left at a phone number where a debt collector has spoken to the consumer at least once before. (Opp'n, 16:16--19 (citing exhibit).)

In its reply, LRLO argues that the FDCPA requires debt collectors communicating with consumers to make the disclosures it did. While this is true, De La Torre cites *Foti v. NCO Fin'l Sys.*, 424 F. Supp. 2d 643, 658--59 (S.D.N.Y. 2006) for the principle that debt collectors are not required to leave voice mails at all, and those who do must comply with both § 1692e(11) (requiring disclosure that the communication is an attempt to collect a debt) and § 1692c(b) (forbidding communications to third parties). *Foti* persuasively points out that the FDCPA's requirements may effectively prevent debt collectors from using some means of communications, and that they may do so even if those are the most economical or efficient means available. This means, in other words, that a debt collector, by choosing a particular method of communication, may risk crossing a line and falling afoul of the FDCPA's regulations. *Foti* at 659--660 (citing *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996)).

De La Torre, for her part, requests partial summary judgment in her favor on this issue. But her evidence is not, by itself, enough to establish liability. Her terse declaration leaves open many possible scenarios in which LRLO would not be liable. For example, the circumstances under which other people could hear her messages are never explained. She might, for example, have played them for others herself, which would make her rather than LRLO the discloser. And the fact that people heard the messages, or part of them, does not show the messages were actually understood. While the claim is rather thinly pleaded and supported, a reasonable jury might find for either party.

**Lawsuit in State Court**

The SAC seeks recovery under the FDCPA on the theory that LRLO falsely represented the amount owed. De La Torre has no direct evidence, and can offer none, regarding the actual amount of her debt. Instead, she argues that LRLO is estopped for claiming she owed $3,748.22, because the state court awarded only $3,072.99.

LRLO, on behalf of its client, the creditor, sued De La Torre in state court for the balance of her account, $3,748.22. A transcript from that proceeding (Docket no. 72-8, Trial Tr.) is attached as Ex. 6 to LRLO's motion. At trial, LRLO offered De La Torre's credit card invoice, which showed this to be the amount she owed. (Trial Tr., 21:19--26.) De La Torre

testified she had made some payments but had no records and did not remember details of when, how they were made, or how much she paid. (*Id.*, 30:19--32:7.) She testified that by her "best estimate" she had eventually paid everything she owed. (*Id.* 32:21--33:1.) The court later found she was uncertain how much, if any, she owed. (*Id.* 37:9--13.)

The court awarded $3,072.99. De La Torre contends this shows that LRLO is estopped from denying that this was the amount actually owed, while LRLO argues that the court's reasoning was simply that $3,072.99 was the amount LRLO had proved De La Torre owed, based on her own validation of the debt. (*See* Trial Tr. at 34:13--35:15, 37:5--21.)

The problem for De La Torre is that, while LRLO proved by a preponderance of evidence that she owed $3,072.99, there was no finding that she did not owe more. LRLO principally argued that she owed the full $3,748.22, but as a fallback argued that her conduct (making payments on the debt without disputing it) amounted to a ratification of the debt in the amount of $3,072.99. (Trial Tr., 35:1--15.) In other words, LRLO pursued two alternative theories at trial, and made clear it was willing to accept $3,072.99 even though it thought slightly more was owed.

The record is clear that De La Torre was unable to offer any clear or credible evidence at all regarding the amount of the debt, and that she did not prove that she did not owe either of the two amounts sought. The trial court's willingness to accept LRLO's backup position does not suggest that it "necessarily decided" the primary theory was wrong. *See Castillo*, 92 Cal. App. 4th at 481. The court might, for example, have thought the evidence that De La Torre owed $3,7748.22 was in equipoise, or at any rate was less compelling than the evidence that she owed at least $3,072.99. What was necessarily decided was that De La Torre owed <u>at least</u> $3,072.99. Whether she owed the additional $675.23 was not necessarily decided.

Alternatively, LRLO argues that it is entitled to the bona fide error defense embodied in § 1692k(c). This defense is available to a debt collector for unintentional violations resulting from mistakes of fact, despite the maintenance of procedures reasonable adapted to avoid such errors. *See Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 779 (9th Cir. 1982).

Here, undisputed evidence shows LRLO had a client agreement with the creditor, requiring the creditor to provide it with accurate information about valid debts. The creditor provided LRLO with the case file, warranting that the information was accurate. As long as debt collectors' reliance information provided by their creditor clients is reasonable, they need not independently investigate the debt in order to benefit from this defense. *See Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1177 (9th Cir. 2006) (citing *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992)) ("[I]f a debt collector reasonably relies on the debt reported by the creditor, the debt collector will not be liable for any errors.")

The Opposition cites other occasions when LRLO told De La Torre even larger amounts were owed (Opp'n, 17:25--18:3), but these are not alleged in the SAC and in any event were not litigated in state court. Because De La Torre has no evidence that these amounts were inaccurate, she could not prevail even if these claims were in the SAC.

**Conclusion and Order**

For the reasons set forth above, LRLO's motion for summary judgment is **GRANTED IN PART**. De La Torre's claims that LRLO's representatives were abusive during collection calls; that they failed to adequately identify themselves during collection calls; that they placed excessive calls to her; and that they communicated information about her debt to third parties survive summary judgment. But with regard to all other claims, she as failed to carry her burden, and those claims are therefore **DISMISSED WITH PREJUDICE**. De La Torre's motion for partial summary judgment is **DENIED**.

On December 5, 2015, the Court set the final pretrial conference on Tuesday, **February 17, 2015** at 11:30 a.m. Because of a heavy criminal calendar, that conference will instead be held at **3:30 p.m.** That order directed the parties to submit a proposed pretrial

/ / /
/ / /
/ / /
/ / /

order in editable electronic format. The parties should, if they cannot prepare a proposed pretrial order in advance of the pretrial conference, submit the one they have prepared.

**IT IS SO ORDERED**.

DATED: February 11, 2015

*[signature]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge